IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIRK MACKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. 4:26-CV-02031 |
| 10001 LONG POINT SHOPPING CENTER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, KIRK MACKEY, by and through the undersigned counsel, and files this, his Complaint against Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff, KIRK MACKEY (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3. Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, 10001 LONG POINT SHOPPING CENTER, LLC (hereinafter "10001 LONG POINT SHOPPING CENTER, LLC"), is a domestic limited liability company that transacts business in the State of Texas and within this judicial district.

8.      Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, may be properly served with process for service via its Registered Agent, to wit:  c/o Gil Y. Lee, Registered Agent, 1911 Hamlin Valley, Houston, TX  77090.

### FACTUAL ALLEGATIONS

9.      On or about November 8, 2025, Plaintiff attempted to be a customer at "USA Liquor," a business located at 10001 Long Point Road, Houston, TX  77055, referenced herein as USA Liquor" but was unable to do so due to barriers to access preventing him from using the only

2

accessible ramp to reach the stores at the Property.

10.    On or about January 8, 2026, Plaintiff again attempted to be a customer at "USA Liquor," a business located at 10001 Long Point Road, Houston, TX  77055, referenced herein as USA Liquor" hoping the barrier was removed.  However, the 3-inch vertical rise at the only ramp at the Property was impossible for Plaintiff to overcome and was unable to patronize USA Liquor due to Plaintiff's disability impacted by the barriers to access identified in this Complaint.  *See* photograph attached hereto as Exhibit 1.

11.    Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, is the owner or co-owner of the real property and improvements that USA Liquor is situated upon and that is the subject of this action, referenced herein as the "Property."

12.    Plaintiff's access to USA Liquor located at 10001 Long Point Road, Houston, TX 77055, Harris County Property Appraiser's property identification number: 0583030000006 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

13.    Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, 10001 LONG POINT SHOPPING CENTER, LLC and a  tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate

the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

14.     Plaintiff lives less than 6 miles from the Property.

15.     Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

16.     Plaintiff has visited the Property three times before as an attempted customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a customer to USA Liquor and to determine if and when the Property is made accessible and for Advocacy Purposes.

17.     Plaintiff intends on revisiting the Property to purchase drinks and services as a customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous continuing barriers to access, as such, Plaintiff is currently deterred from returning to the Property until the barriers to access are removed.

18.     Plaintiff travelled to the Property three times before as an attempted customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

19.     Plaintiff encountered all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled

4

within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on the three attempted visits in the past, Plaintiff may encounter a different barrier to access that was not identified in the Complaint in a subsequent visit because the existing barriers prevented his access to and prevented encountering additional barriers inside the units. As such, all barriers to access identified in the Complaint must be removed and those interior barriers not identified but is reasonable for Plaintiff to encounter in the future must also be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20. Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

21. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

22. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.    Congress explicitly stated that the purpose of the ADA was to:

(i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.    The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.    The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

26.    The Property is a public accommodation and service establishment.

27.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department

6

of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.    Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

29.    The Property must be, but is not, in compliance with the ADA and ADAAG.

30.    Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.    Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32.    Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal

enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.      Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.      A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

    i.      In front of Unit 10001F, the two accessible parking spaces do not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at these accessible parking spaces due to the close presence of parked vehicles on either side of the accessible parking spaces not providing enough room for the wheelchair, this eliminates the accessible route from these accessible parking spaces.

    ii.      In front of Unit 10001F, the two accessible parking spaces have a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and

are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

iii.     There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

iv.     In front of Unit 10001F, the accessible ramp adjacent to the two accessible parking spaces has a vertical rise that is approximately 3-inches, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

v.     In front of Unit 10001F, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall off the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

vi. In front of Unit 10001F, the accessible ramp located adjacent to the two accessible parking spaces protrudes into a parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access makes it likely that when a vehicle parks in the parking space where the ramp protrudes into, the parked vehicle blocks the access route to the ramp preventing an individual in a wheelchair from using the ramp.

vii. In front of Unit 10001F, due to the barriers to access identified in (i), (iv), and (vi) above, the Property lacks an accessible route from these accessible parking spaces to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

viii. In front of Unit 10001F, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the two accessible spaces have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

ix. For all of the units on the Property, there is a doorway threshold with a vertical rise of 1-1 ½ inches and does not contain a bevel with a maximum slope of 1:2 in violation of Section 404.2.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the interior of the Property at this location as the vertical rise at the door threshold could potentially cause Plaintiff to tip over when attempting to enter.  Moreover, this

barrier to access is made more difficult by the fact that it is in the doorway and Plaintiff would be required to hold the door open with one hand while attempt to the "push" the wheel of the wheelchair over the vertical rise.

x.  For all of the units on the Property, the maneuvering clearance of these accessible entrances is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access these units of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand.  When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

xi.  Throughout the exterior access routes of the Property, there are openings in the ground surfaces with a width exceeding an inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increase the potential for Plaintiff's wheelchair to tip over in violation of Section 302.3 of the 2010 ADAAG Standards.

xii.  In front of Unit 10001, there is a ramp with a surface slope in excess of 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

11

xiii. In front of Unit 10001, there is a ramp that has a vertical rise in excess of ¼ inch in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

xiv. In front of Unit 10001, there is another ramp that protrudes into a parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This barrier to access makes it likely that when a vehicle parks in the parking space where the ramp protrudes into, the parked vehicle blocks the access route to the ramp preventing an individual in a wheelchair from using the ramp.

xv. As a result of the barriers to access identified in (i), (iv), (vi), and (xiv) the Property lacks an accessible route from accessible parking spaces, accessible passenger loading zones, public streets, sidewalks and/or public transportation stops to the accessible entrance of the Property in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xvi. Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

35. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

36.     Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

37.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.     All of the violations alleged herein are readily achievable to modify the Property into compliance with the ADA due to the fact the modifications necessary to cure the barriers to access identified in paragraph 34 of this Complaint are the specific types of barriers listed in 28 C.F.R. § 36.304 as readily achievable to modify.

39.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, has the financial resources to make the necessary modifications.  According to the Property Appraiser, the Appraised value of both Property is $1,497,099.00.

41.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

42.     Upon information and good faith belief, the Property has been altered since 2010.

43.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with

13

the 1991 ADAAG standards.

44.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

45.     Plaintiff's requested relief serves the public interest.

46.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, 10001 LONG POINT SHOPPING CENTER, LLC.

47.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

48.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, 10001 LONG POINT SHOPPING CENTER, LLC , in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, 10001 LONG POINT SHOPPING CENTER, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, 10001 LONG POINT SHOPPING CENTER, LLC  to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with

14

disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses

and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: March 13, 2026

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

15